CLAUD SOMERS *v.* MOSES D. JOHNSON.

### *Joint Sureties.    Collateral.*

The rule that if one of two joint sureties for an insolvent principal holds collateral the other is entitled to share in it, does not apply where the sureties are on separate bonds to secure a faithful discharge of duty on the part of the principal acting in different capacities, first as guardian of an insane ward, and then on the ward's death, as administrator of her estate, when the collateral was not given as security for signing the bond, but for signing as surety certain bank notes; and this is so, although, after it was claimed that the principal was in default, the sureties entered into a written agreement to join in defence and share equally in the liability; and the defendant realized more out of the collateral than he was compelled to pay on said notes.

HEARD by the court on a referee's report, December Term, 1883, Caledonia County, Ross, J., presiding. Judgment for the defendant.

It appeared, that sometime prior to 1877, the plaintiff had signed the bond of one Abbott to the Probate Court as guardian of Phebe Gregg, an insane person; that subsequently said Phebe deceased, said Abbott was appointed administrator of her estate, and the defendant signed his probate bond; that the defendant had also signed certain paper for said Abbott as surety to the Merchants' National Bank of St. Johnsbury, and had received as security notes signed by Avery George, and a draft on Hill, Jewell & Co. of Boston.

The heir of Phebe Gregg's estate made a claim against said Abbott for $1,000, coming from said estate; and claimed that the plaintiff and defendant were each liable therefor, or for some part of it as sureties on said Abbott's bonds.

Because of this claim, on January 14, 1878, the plaintiff and defendant entered into the following agreement:

" Whereas Claud Somers signed J. D. Abbott's guardian

bond as surety for him to the judge of probate of Mrs. Phebe Gregg as an insane person, and whereas Moses Johnson signed as surety for said Abbott his administration bond on the estate of said Phebe Gregg, and a question being made by the heir of said Phebe, to wit : Mrs. Caroline Holmes, she claiming that said Abbott is in arrears on both said bonds and claims, that the said bondsmen are liable to her for any balance on either or both said bonds : Now we, the said Claud Somers and Moses Johnson, hereby agree with each other to jointly defend any and all suits on said bonds charging us with liability thereon, and to be at equal charges in such defence, and share equally in any and all liability or liabilities which may be adjudged against us, whether the liability is on either of said bonds, to wit ; the guardian bond or the administration bond."

The defendant realized a larger sum out of the collateral than was necessary to indemnify him for signing as surety for Abbott said bank notes, and this suit was brought to re- cover one-half of such excess. The plaintiff and defendant settled the claim of the Gregg heir by each paying $250. It also appeared that the plaintiff had brought a suit against said Abbott, and said George as trustee, and the defendant as claimant, which suit was tried on a commissioner's report, June Term, 1880, Caledonia County, and decided in favor of the defendant. The report in that suit was made a part of the report in this, so far as it is applicable. It was there found :

"December 27, 1877, at the time the assignment was made, and the draft on Hill, Jewell & Co. was given, nothing was said about the liability on which the draft was to be applied as collateral. Johnson was not then aware that he was on Abbott's bond at the probate office, or had forgotten the fact. But it turned out that he had signed a bond in the sum of $500, with Abbott, in the matter of Mrs. Gregg's estate, and on April 27, 1878, he had to pay the sum of $250 on this liability, to avoid a suit on said bond. There is no direct evidence to show whether Abbott was aware of Johnson's liability on said bond when he gave the draft or not. From all the circumstances I incline to the belief that Abbott intended to secure Johnson for all his liability for

him.   But I do not think it was in his mind at the time he gave the draft and assigned the notes that there was likely to be any liability other than that at the bank."

At the time the George notes and mortgage were given to the defendant, he signed a receipt for them in which it was stated :   " This is given to secure me for endorsing two notes, each for the sum of $500 at the Merchants' National Bank of St. Johnsbury, and when said notes are paid the said notes and mortgage are to be returned to said Abbott." The receipt was given in May, 1877; but the notes and mortgage were. not assigned till December 27, 1877, when it became apparent that the defendant had got one of the bank notes to pay.

*Bates & May,* for the plaintiff.

The relation of co-sureties existed between the parties. Whatever the relation may have been prior to the agreement of January 14, 1878, they from that moment became jointly liable to the heir of Mrs. Gregg for such sum as might be found due from Mr. Abbott, upon one or both bonds.   If the court can say from the evidence before it that the parties in fact are co-sureties then each becomes liable to the other according to the law governing that relationship.   1 Lead. Cas. Eq., Part 1, pp. 137, 154, 172; Story Eq. s. 495.   Parties may by agreement assume the relation of co-sureties.  *Whipple* v. *Briggs,* 28 Vt. 65; *Hinsdill* v. *Murray,* 6 Vt. 412; *Miller* v. *Sanger,* Ib. 136.

These parties, it is true, were sureties upon separate bonds, but those bonds were for the faithful performance of the same duty by the same principal.   In fact the engagement was the same in both cases.   It was an undertaking that Mr. Abbott should faithfully keep and disburse the moneys of Mrs. Gregg, and pay over the balance to her heir.   1 Lead. Cas. Eq. pp. 123, 125; Metc. Cont. 177.

*Poland,* for the defendant.

The rule in equity, where one of two joint sureties has

collateral, the other is entitled to share in it, is not contro-
verted. But the Hill, Jewell & Co. draft was not security
for signing the administration bond, but for endorsing the
bank notes. Johnson had utterly forgotten the existence of
the bond. The defendant by judicious management, and
by reducing his liability to the bank, succeeded in realizing
a larger sum from the George notes and the Hill, Jewell &
Co. draft than he had to pay the bank.

Suppose the defendant had paid over to Abbott all that
he collected above the amount he paid the bank. Had he
not a perfect right to do so? and had the plaintiff any right
to object? This is a perfect test of the claim of the plaintiff
in this suit.

The ground on which a co-surety becomes entitled to
share in a security held by another surety is, that the se-
curity becomes a trust fund for the payment of the debt on
which he is holden. How does this plaintiff become en-
titled?

Abbott never gave any security for any debt on which
this plaintiff was liable. The defendant never agreed to
hold any security for him.

The opinion of the court was delivered by

VEAZEY, J. The plaintiff stands on a sound legal proposi-
tion, viz. : that if one of two joint sureties for an insolvent
principal holds collateral from the principal, the other surety
is in equity entitled to share in it. But we think the referee
has failed to find the relation of co-suretyship between the
plaintiff and defendant to its full legal import, or a state
of facts which warrants such inference. There was no such
relation before they entered into the written agreement. The
language of that writing does not necessarily import an
agreement to share in collaterals. They did not understand
when they made the agreement that the defendant had any
security for his obligation on the bond, which he had signed
as surety. The draft from which the fund in question was

realized was not given to the defendant as security for signing the bond. There is nothing in the report to show that the defendant was in greater peril on his bond than the plaintiff was on his; nor to show why the defendant should give the plaintiff the benefit of the defendant's security if he had any. The agreement was to join in the defence and share the expense and liability. They settled before trial by paying equally as agreed. In the light of the facts reported we do not think we should construe this as an agreement to become co-sureties except to the extent expressed in the writing; not an agreement to share in the fund in question.

Judgment affirmed.